# Susman Godfrey l.l.p.

a registered limited liability partnership

Suite 3800

1201 Third Avenue

Seattle, Washington 98101-3000

(206) 516-3880

Fax (206) 516-3883

www.susmangodfrey.com

_____

| Suite 5100 | Suite 5100 | Suite 950 | 15th Floor |
|---|---|---|---|
| 1000 Louisiana Street | 901 Main Street | 1901 Avenue of the Stars | 560 Lexington Avenue |
| Houston, Texas 77002-5096 | Dallas, Texas 75202-3775 | Los Angeles, California 90067-6029 | New York, New York 10022-6828 |
| (713) 651-9366 | (214) 754-1900 | (310) 789-3100 | (212) 336-8330 |

William Christopher Carmody
Direct Dial (212) 336-8334

E-Mail BCarmody@susmangodfrey.com

December 17, 2014

**VIA ECF & FACSIMILE**

The Honorable James C. Francis
United States Magistrate Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 18D
New York, New York 10007

Re:    *United States ex rel. Kester v. Novartis Pharmaceuticals Corp. et al.*,
       Civil Action No. 11-8196 (CM) (JCF)

Dear Judge Francis:

We represent the relator, David M. Kester, in this case, and write to bring a discovery issue to Your Honor's attention. The Court entered a protective order in this action. (Dkt. # 232) That protective order was signed by sixteen parties, which includes everyone in this action except one party – CVS. Rather than sign the existing protective order, CVS seeks to submit a new protective order that (a) improperly impedes on the relator's ability to share information with the government, (b) violates public policy, and (c) interferes with the relator's ability to prove the claims in this action. *See* Exhibit 1 (CVS's Proposed Protective order); Exhibit 2 (emails between counsel for relators and counsel for CVS re protective order dispute). We submit this discovery letter to respectfully request that the Court order that CVS be subject to the existing protective order, like every other party in this action.

    **I.**    **Background**

Earlier this year, the parties submitted an agreed protective order to govern all discovery in this action. That proposed protective order was the product of extensive negotiation among sixteen parties and struck a balance between protecting confidential materials and honoring important duties and obligations

3468503v1/014136

December 16, 2014
Page 2

between the relator and the government in this *qui tam* action. The Court entered that agreed protective order on September 2, 2014, and the parties have operated under it without issue.

Defendant CVS is not a party to the entered protective order because it was not involved in discovery at that point. Now that discovery involving CVS has commenced, we requested that CVS sign the entered protective order. But CVS refused and is now attempting to negotiate a new protective order that would prohibit disclosure to the government plaintiffs of any document CVS labels as "confidential" and that would preclude even the relator from using such documents in litigating any of the claims in which the Government has intervened.

As discussed below, there is no legitimate reason for the Court to enter another protective order, and CVS should sign the same protective order that every other party signed.

## II. CVS Should Be Subject To The Existing Protective Order

CVS's attempt to negotiate a new protective order is a waste of time, and its proposed protective order also has several important deficiencies. First, it seeks to preclude the government from viewing CVS's confidential information based on the erroneous argument that the government has no right to view CVS's confidential information because it has not yet intervened on the claims against CVS. But CVS's argument ignores controlling law concerning the role the government plays in *qui tam* actions and interferes with the ongoing relationship between the government and the relator.

Because the relator's *qui tam* claims are brought on behalf of the United States and the plaintiff states, the United States and the plaintiff states are the "real parties" in interest in such claims. *U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 936 (2009). As the Second Circuit has explained:

> All of the acts that make a person liable under [the False Claims Act] focus on the use of fraud to secure payment from the government. It is the government that has been injured by the presentation of such claims; it is in the government's name that the action must be brought; it is the government's injury that provides the measure for the damages that are to be trebled; and it is the government that must receive the lion's share—at least 70%—of any recovery.

December 16, 2014
Page 3

*U.S. ex rel. Mergent Serv. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008) (citation omitted).

Because the Government is the real party in interest, Congress has taken a number of measures to ensure that the Government has full visibility into and ultimate control over a relator's litigation of *qui tam* claims. For, example, when a relator litigates declined *qui tam* claims, the federal False Claims Act requires the relator to honor requests by the United States for service of pleadings and deposition transcripts, authorizes the court to stay or restrict the parties' discovery upon request of the United States, permits the United States to intervene during the litigation "for good cause," precludes the relator from resolving or dismissing the claims without the United States' consent, authorizes the United States to dismiss claims over the objection of the relator following a hearing, and permits the United States to settle claims over the objection of the relator upon a showing that a resolution is "fair, adequate and reasonable."  31 U.S.C. § 3730(b)(1), (c)(2), (c)(3) and (c)(4). State false claims laws contain analogous provisions. It is these provisions that provide the executive branch with ultimate control over litigation of even declined *qui tam* claims and that allow the federal *qui tam* provisions to withstand constitutional scrutiny under the "take care," "appointments" and "separation of powers" clauses. *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753-755 (5th Cir. 2001) (*en banc*); *see also Morrison v. Olson*, 487 U.S. 654, 696 (1988) (congressional action must leave the Executive Branch with sufficient "control" over its litigation so as to "ensure that the President is able to perform his constitutionally assigned duties.").

CVS's attempt to preclude the government from learning about the litigation of its own claims directly contradicts this statutory structure. Indeed, the court in *United States ex rel. Stewart v. The Louisiana Clinic et al.* refused to permit a defendant to hide from the United States the documents it was producing in a declined *qui tam* action. 2002 WL 31819130 (E.D. La. Dec. 12, 2002). In *Stewart*, a defendant sought to use a protective order to preclude the United States from receiving its documents on the ground that the government had not intervened in the action. The court rejected that argument, reasoning that the government remains a real party in interest regardless of whether it has intervened, and it retains control over several important aspects of the litigation:

> Based on these authorities, **I find the government's real party in interest status, coupled with the elements of control maintained by the United States in this qui tam action, entitle it to receive documents produced in discovery**. The peculiar nature of the non-intervening government's role in qui tam actions, especially the rights

December 16, 2014
Page 4

>           to intervene with good cause, to prevent dismissal of the
>           action, to dismiss the action despite relators' objections and
>           to settle or approve any settlement, cannot be prudently
>           exercised without access to all relevant discovery.

*Id.* at *9 (emphasis added). The *Stewart* court's reasoning applies with even greater force here where the government has already intervened with respect to certain claims in this action.

Second, CVS's proposed protective order would violate well-established public policy by precluding a relator from alerting law enforcement to apparent violations of law. In the context of the False Claims Act, numerous courts have held that agreements restricting the reporting of apparent False Claims Act violations contravene public policy and are not enforceable. *See*, *e.g.*, *United States ex rel. Green v. Northrop*, 59 F. 3d 953 (9th Cir. 1995) (finding unenforceable as against public policy release that would prohibit former employee from bringing alleged FCA violations to the attention of the government); *Siebert v. Gene Sec. Network*, 2013 WL 5645309, *8 (N.D. Cal. Oct. 16, 2013) ("The Court agrees that any alleged obligation by Siebert not to retain or disclose the confidential documents that form the basis of this action is unenforceable as a matter of public policy because it would frustrate Congress' purpose in enacting the False Claims Act — namely, the public policy in favor of providing incentives for whistleblowers to come forward, file FCA suits, and aid the government in its investigation efforts."); *United States ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033, 1039 (CD. Cal. 2012) (denying motion to strike exhibits because "Relators sought to expose a fraud against the government and limited their taking to documents relevant to the alleged fraud. Thus, this taking and publication was not wrongful, even in light of nondisclosure agreements, given 'the strong public policy in favor of protecting whistleblowers who report fraud against the government.'"); *United States v. Cancer Treatment Ctrs. of Am.*, 350 F. Supp. 2d 765, 773 (N.D. Ill. 2004) (holding relator exempt from liability for breach of confidentiality agreement for disclosure to government of documents showing employer engaged in fraudulent healthcare billing).

Finally, CVS's proposed protective order improperly precludes plaintiffs from using CVS's material to prove the claims in which the Government has intervened. There is no support for CVS's position. Its documents will likely be relevant in proving Novartis's illegal scheme, and therefore are relevant to prove all of plaintiffs' claims. Indeed, every other defendant already agreed to the entered protective order, which permits confidential information to be used for any purpose in this action.

### III. Conclusion

For the reasons stated above, Mr. Kester respectfully requests that the Court order that CVS be subject to the existing protective order that was entered in this action. We are available to discuss this issue at the Court's convenience, and we greatly appreciate the Court's attention to this matter.

Respectfully,

William Christopher Carmody