USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/30/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

UNITED STATES OF AMERICA,

   Plaintiff-Intervenor,

v.

NOVARTIS PHARMACEUTICALS CORP. *et al.*,

   Defendants.

------------------------------------- x

11 Civ. 8196 (CM) (JCF)

**STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL**

  WHEREAS, this Stipulation and Order of Settlement and Dismissal (the "Stipulation") is entered into by and among (*i*) plaintiff the United States (the "United States" or the "Government"), by its attorney Preet Bharara, United States Attorney for the Southern District of New York, (*ii*) the *qui tam* relator David Kester ("Relator"); and (*iii*) defendant Accredo Health Group, Inc. ("Accredo," and together with the Government and Relator, the "Settling Parties"), through their respective authorized representatives;

  WHEREAS, in November 2011, Relator filed a sealed *qui tam* action (the "Action") in the United States District Court for the Southern District of New York (the "Court") pursuant to 31 U.S.C. § 3730(b), the *qui tam* provision of the False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "FCA"), alleging, *inter alia*, that defendants Novartis Pharmaceuticals Corp. ("Novartis") and Accredo violated the FCA and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) (the "AKS"), in connection with distributing the iron chelation drug Exjade through the Exjade Patient Assistance and Support Services ("EPASS") network;

  WHEREAS, on October 30, 2013, the United States intervened in the Action against Novartis based on Novartis's alleged participation in a kickback scheme involving Exjade and, subject to the Government's right to intervene later for good cause, declined to intervene as to Relator's claims against Accredo based on Accredo's alleged involvement in the Exjade

Page 1 of 16

kickback scheme;

Whereas, the Government alleges – as relevant to this settlement – that, from in or about March 2008 to in or about March 2012, Accredo violated the FCA and the AKS by participating in an Exjade patient referral allocation scheme under which Novartis and Accredo agreed that Accredo would receive additional patient referrals and related benefits in return for achieving the highest refill percentage for Exjade patients as compared to the refill percentages among Exjade patients at the other EPASS pharmacies (the "Covered Conduct");

Whereas, simultaneously with submitting this Stipulation to the Court for review, the Government also is submitting a notice of intervention stating that the Government has concluded that good cause exists to intervene on Relator's claims against Accredo based on Accredo's alleged involvement in the Exjade kickback scheme and is therefore seeking leave to intervene on those claims;

WHEREAS, to avoid the delay, uncertainty, and expense of further litigation of the above claims, the United States, the Relator, and Accredo have reached a full and final mutually agreeable resolution of these claims;

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1. Accredo consents to this Court's exercise of personal jurisdiction over Accredo.

2. Accredo admits, acknowledges, and accepts responsibility for the following facts:

   a. In December 2005, Accredo and Novartis signed a contract concerning Accredo's distribution of Exjade. Under that contract, Novartis agreed that Accredo would be one of three specialty pharmacies (the "EPASS pharmacies") permitted to dispense Exjade as part of Novartis's EPASS network.

   b. To prescribe Exjade through EPASS, physicians wrote patient prescriptions on EPASS enrollment forms and submitted those forms to EPASS. Patient prescriptions submitted to EPASS were distributed among the three EPASS

pharmacies, unless insurance requirements dictated otherwise.

c. Within the EPASS network, certain of the prescriptions were directed to a particular pharmacy based on insurance requirements or physician preference. The remaining prescriptions received by EPASS were not designated for a particular pharmacy by insurers or physicians. The distribution of those patients (the "undesignated patient referrals") among the three EPASS pharmacies was made at the direction of Novartis.

d. During the time it was in the EPASS network, nearly all of the Exjade prescriptions dispensed to patients by Accredo were shipped by mail. Upon receiving a patient referral from EPASS, Accredo called the patient or his/her caregiver and, if the patient or caregiver agreed to the initial order, then dispensed the initial shipment of Exjade. For refills, Accredo also called patients or their caregivers to obtain consent and, if the patients agreed to order refills, dispensed refill shipments of Exjade. Even if a physician had prescribed such a refill, Accredo required patient consent before it could ship a refill to an Exjade patient.

e. Pursuant to its contract with Novartis, Accredo collected data on the reasons that patients stopped ordering Exjade refills and provided such data to EPASS on a daily basis. Based on this data, Accredo knew that side effects and physicians' orders to discontinue therapy were among the most common reasons that Exjade patients stopped ordering refills.

f. Exjade patient referrals had economic value to Accredo because having more Exjade patients resulted in higher sales revenue, additional dispensing fees, and additional rebates for Accredo.

g. In or about June 2007, Novartis began issuing monthly "Exjade Scorecards" to the EPASS pharmacies that measured, among other things, the pharmacies' "adherence" scores. Based on discussions with Novartis, Accredo knew that the "adherence" scores in the Exjade Scorecards were designed to show how long Accredo's Exjade patients continued to order refills. Accredo also knew that, in calculating the adherence scores, Novartis did not exclude patients who stopped ordering refills due to side effects or patients who were directed to stop therapy

by their physicians.

h.  In late 2007 and early 2008, Novartis indicated to Accredo that Novartis was dissatisfied with Accredo's performance in terms of its "adherence" scores in the Exjade Scorecards. At a meeting in late January 2008, Novartis executives asked Accredo executives to implement an Exjade adherence improvement plan that involved additional nurse intervention. In early February 2008, a manager from Novartis's Oncology Managed Markets group ("OMM") met with two Accredo executives and told them that Accredo could lose undesignated patient referrals from EPASS if it continued to lag behind the other EPASS pharmacies in the Exjade Scorecards.

i.  At a meeting in March 2008 with two Accredo executives, a senior Novartis OMM executive made statements emphasizing the importance to Novartis of Accredo's adherence performance. Later that month, Novartis told Accredo that Novartis was formulating a plan to allocate undesignated patient referrals to the EPASS pharmacies based on their rankings in the Exjade Scorecards. Specifically, the EPASS pharmacy with the top adherence score in the Exjade Scorecards would receive a larger share of the undesignated patient referrals as compared to the other EPASS pharmacies. In addition, between April and June 2008, Novartis managers told Accredo that Accredo's performance in the Exjade Scorecards was below Novartis's expectation and this affected Novartis's ability to meet its sales targets for Exjade.

j.  In July 2008, Novartis executives reiterated in statements to Accredo that Novartis was dissatisfied with Accredo's performance in relation to Exjade. Later that month, Accredo hired a new nurse for Exjade and assigned that nurse to make a sequence of calls to each Exjade patient.

k.  In making calls to Exjade patients, the nurse at Accredo was supposed to follow a set of call protocols that Accredo had developed. Accredo's 2008 call protocols directed the nurse to tell patients that compliance with Exjade therapy regimen is extremely important and that, if untreated, iron overload could result in arthritis, liver or heart problems, high blood sugar, persistent abdominal pain, severe fatigue, and skin discloration. With regard to adverse reactions,

Accredo's 2008 Exjade call protocols directed the nurse to advise patients about Exjade's common adverse reactions, including diarrhea, abdominal pain, fever, and rash, but not the less common, but more severe, adverse reactions like renal or hepatic impairment.

l. In October 2008, Novartis informed Accredo, and Accredo agreed to a new patient referral allocation plan that Novartis had formulated. Under that plan, Novartis would allocate 60% of all undesignated patient referrals to the EPASS pharmacy with the top "adherence" scores in the Exjade Scorecards and allocate 20% of the undesignated patient referrals to each of the other two EPASS pharmacies.

m. In 2008, Novartis and Accredo executed a series of amendments to Accredo's EPASS contract. None of the amended agreements specified the basis for determining the volume of undesignated patient referrals Accredo would receive. These amended agreements also did not specify whether Accredo was required to have a nurse call Exjade patients and, if so, the number or sequence of calls the nurse needed to make.

n. In February 2009, an Exjade executive from Novartis visited Accredo and met with the Exjade nurse at Accredo. During that meeting with the Novartis executive, the Exjade nurse at Accredo described how she handled calls with Exjade patients.

o. In January 2010, the FDA required Novartis to add a "black box warning" to the Exjade label to highlight that Exjade may cause renal impairment (including renal failure), hepatic impairment (including hepatic failure), and gastrointestinal hemorrhage. The FDA- mandated warning also stated these reactions were fatal in some reported cases.

p. After January 2010, no representative of Novartis asked or suggested to Accredo that its Exjade call protocols should be revised to require the Exjade nurses to discuss the serious risks listed in Exjade's "black box warning" when they called patients to discuss Exjade therapy.

q. In February 2010, Accredo updated its Exjade call protocols. In terms of the adverse reactions for Exjade, the February 2010 Accredo Exjade call protocols

continued to direct the Exjade nurses to advise patients about the common adverse reactions, such as diarrhea and rash, but not the less common, but more severe, adverse reactions discussed in the "black box warning," such as renal or hepatic failure. As revised, the February 2010 Exjade call protocols directed the nurses to tell Exjade patients that "compliance with Exjade is very important in order to prevent the following complications that result from untreated iron overload: Arthritis, High blood sugar, Persistent abdominal pain, Severe fatigue, Skin discoloration, Stroke, or Death."

r. In early 2010, Novartis notified Accredo that, under the plan they agreed on in 2008, Accredo would receive additional undesignated patients because Accredo had obtained the top adherence score in the Exjade Scorecards in the fourth quarter of 2009. Specifically, based on communications with Novartis, it was Accredo's understanding that it was entitled to receive 60% of all undesignated patients in the second, third, and fourth quarters in 2010, and for all four quarters in 2011.

s. In late March 2012, Novartis notified Accredo that, starting in April 2012, it would stop allocating additional Exjade patient referrals to the EPASS pharmacy with the highest Exjade Scorecard ranking, as Novartis and Accredo had agreed to in October 2008.

t. One month later, in April 2012, Accredo stopped assigning nurses to call Exjade patients to discuss their Exjade therapy. The EPASS contract between Novartis and Accredo expired on April 1, 2012, and Novartis and Accredo did not renew that contract.

3. In settlement of the United States' claims against Accredo in this action, Accredo shall pay to the United States the sum of forty-five million sixty thousand five hundred ninety-eight dollars and eighty-seven cents ($45,060,598.87) (the "Settlement Amount"), plus interest, compounded annually at the rate of 3.25%, accruing from April 10, 2015, to the date of the initial payment. Accredo shall pay the Settlement Amount within ten (10) days of the Effective Date of this Stipulation (as defined in Paragraph 24 below).

4. Subject to the exceptions in Paragraph 5 below (concerning excluded claims), conditioned upon Accredo's timely payment of the Settlement Amount pursuant to paragraph 3, the United States, on behalf of itself, its officers, agencies and departments, releases Accredo and its current and former officers, directors, employees, assigns, attorneys, agents and corporate parents and subsidiaries from False Claims Act, Civil Monetary Penalties Laws (42 U.S.C. § 1320a-7a), and Program Fraud Civil Remedies Act (31 U.S.C. §§ 3801-3812) liability and from liability under the common law or equitable theories of fraud, negligent misrepresentation, unjust enrichment and payment by mistake for the Covered Conduct.

5. Notwithstanding the release given in Paragraph 4 of this Stipulation, or any other term of this Stipulation, the following claims of the United States are specifically reserved and are not released by this Stipulation:

  a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

  b. Any criminal liability;

  c. Except as expressly stated in this Stipulation, any administrative liability, including mandatory and permissive exclusion from Federal health care programs;

  d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct; and

  e. Any liability based on obligations created by this Stipulation.

6. Accredo waives and shall not assert any defenses it may have to any federal criminal prosecution or federal administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Stipulation bars a remedy sought in such federal criminal prosecution or federal administrative action. Nothing in this paragraph or any other provision of this Stipulation

constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

7. Accredo fully and finally releases the United States, and its agencies, officers, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Accredo has asserted, could have asserted, or may assert in the future against the United States, and its agencies, officers, employees, servants, and agents, related to the Covered Conduct and the United States's investigation and prosecution thereof.

8. In consideration of (*i*) execution of this Stipulation by the Relator and (*ii*) the Relator's releases as set forth in paragraph 9 below, Accredo and all of its current and former officers, directors, employees, assigns, attorneys, and agents, on behalf of themselves and their heirs, attorneys, agents, successors, and assigns, release the Relator, his heirs, attorneys, agents, successors, and assigns, from any and all claims for any action, event, or conduct related to the Relator's allegations in this Action.

9. Conditioned upon Accredo's timely payment of the Settlement Amount, the Relator, for himself and his heirs, successors, attorneys, agents, and assigns, releases Accredo and its corporate affiliate, CuraScript, Inc. ("CuraScript"), and all of their current and former officers, directors, employees, assigns, attorneys, agents, and corporate parents and subsidiaries from any and all manner of claims, proceedings, liens, and causes of action of any kind or description that the Relator has against Accredo and CuraScript related to the Relator's allegations in this Action. Provided, however, that, notwithstanding the foregoing, or any other term of this Stipulation, Relator's release in this paragraph does not affect in any manner any claim of the United States against Accredo, CuraScript, or any other person or entity except to the extent that such claim is expressly released by the United States in Paragraph 4 above.

Further provided that, nothing in this Stipulation shall preclude Relator from seeking to recover his reasonable expenses and attorneys' fees and costs from Accredo pursuant to 31 U.S.C. § 3730(d) or be deemed to have released his claims for such reasonable expenses and attorneys' fees and costs.

10. The Relator shall not object to this Stipulation and agrees and confirms, pursuant to 31 U.S.C. § 3730(c)(2)(B), that the terms of this Stipulation are fair, adequate, and reasonable under all the circumstances.

11. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare carrier or intermediary, or any federal or state payer, related to the Covered Conduct; and Accredo agrees not to resubmit to any Medicare carrier or intermediary or any federal or state payer any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

12. Accredo agrees to cooperate fully and truthfully with the United States's investigation of individuals and entities not released in this Stipulation. Specifically, Accredo shall provide truthful and complete disclosure of all non-privileged documents and information requested by the United States relating to the Covered Conduct, the facts set forth in Paragraph 2 above, the allegations in the United States's operative complaint, and/or the complaints filed by the States that intervened in this Action. Further, Accredo agrees to furnish to the United States, upon request, complete and un-redacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf. Additionally, Accredo shall encourage and use its best efforts to make available, and agrees not to impair, the cooperation of its current and former directors, officers, and employees, for interviews and testimony, consistent with the rights and privileges of such

individuals.

13. Accredo and CuraScript agree to respond to document requests, interrogatories, requests for admissions and requests to depose Accredo or CuraScript employees, or to take a deposition of the organization under Federal Rule of Civil Procedure 30(b)(6), as if they remained parties to the case. Accredo and CuraScript will act in good faith to produce documents, including recordings and other information as soon as practicable, but no later than permitted under the Federal Rules of Civil Procedure. Any failure to produce responsive documents or respond to other discovery requests in a timely manner can be raised with the Court in an action to enforce the settlement agreement, over which the Court shall retain jurisdiction as long as Accredo and CuraScript have obligations under this paragraph.

14. Subject to the exceptions in Paragraph 5, and in consideration of Accredo's obligations under this Stipulation, the United States shall promptly file appropriate papers to dismiss the claims against Accredo in this action for the Covered Conduct once Accredo has paid the Settlement Amount to the Government pursuant to Paragraph 3 above. Further, promptly after the Court enters this Stipulation, Relator shall file appropriate papers to dismiss – with prejudice as to the Relator and without prejudice as to the United States – all of the claims against Accredo and CuraScript that Relator asserts on behalf of the United States in Relator's Third Amended Complaint and as to which the United States has not intervened and is not intervening in connection with this settlement. Provided, however, that the Court shall retain jurisdiction over this Stipulation and the Settling Parties until such time as Accredo has completed its obligations under Paragraphs 12 and 13 and until the Court has decided or the Settling Parties have resolved the Relator's claims for his reasonable expenses, attorneys' fees and costs and for his share of Settlement Amount under this Stipulation.

15. Accredo shall be in default of this Stipulation if it fails to pay the Settlement

Amount as set forth in Paragraph 3 on or before the due date for such payment. The United States will provide written notice of any default, to be sent by e-mail and first-class mail to one or more of the counsel for Accredo identified in Paragraph 23. In the event of default, the entire remaining unpaid balance of the Settlement Amount shall be immediately due and payable by Accredo, and interest shall accrue at the rate of 12% per annum compounded daily on the remaining unpaid principal balance, beginning seven (7) business days after delivery of the notice of default. If the Settlement Amount, with all accrued interest, is not paid in full within seven (7) business days following delivery of the notice of default, Accredo shall agree to entry of a consent judgment in favor of the United States against Accredo in the amount of the unpaid balance, and the United States, at its option, may (a) rescind this Stipulation and assert claims against Accredo for the Covered Conduct; (b) seek specific performance of the Stipulation; (c) offset the remaining unpaid balance from any amounts due and owing Accredo at the time of default by any department, agency, or agent of the United States; or (d) exercise any other rights granted by law, or under the terms of this Stipulation, or recognizable at common law or in equity. Accredo shall not contest any offset imposed or any collection action undertaken by the United States pursuant to this paragraph, either administratively or in any Federal or State court. In addition, Accredo shall pay the United States all reasonable costs of collection and enforcement under this paragraph, including attorneys' fees and expenses. In the event that the United States opts to rescind this Stipulation, Accredo shall not plead, argue, or otherwise raise any defense under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that relate to the Covered Conduct.

16. Accredo agrees to the following:

    a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the

regulations and official program directives promulgated thereunder) incurred by or on behalf of Accredo, its present or former officers, employees, and agents in connection with:

(1) the matters covered by this Stipulation;

(2) the United States's civil investigation of the Covered Conduct;

(3) the investigation, defense, and corrective actions undertaken by Accredo in response to the United States's civil investigation of the Covered Conduct (including attorney's fees);

(4) the negotiation and performance of this Stipulation;

(5) the payments Accredo makes to the United States pursuant to this Stipulation and any payments that Accredo may make to Relator, including costs and attorneys fees; and

(6) the negotiation of, and obligations undertaken pursuant to any integrity agreement relating to the Covered Conduct with HHS-OIG to (i) retain an independent review organization to perform annual reviews of required by any such integrity agreement, and (ii) prepare and submit reports to the OIG-HHS, are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs). However, nothing in this Paragraph (*i.e.*, Paragraph 15(a)(6)) that may apply to the obligations undertaken pursuant to any such integrity agreement affects the status of costs that are not allowable based on any other authority applicable to Accredo.

b. Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for by Accredo, and Accredo shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information

statement, or payment request submitted by Accredo or any of its agencies or departments to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

    c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Accredo further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Accredo or any of its agencies or departments, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the unallowable costs. Accredo agrees that the United States, at a minimum, shall be entitled to recoup from Accredo any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment. The United States reserves its rights to disagree with any calculations submitted by Accredo or any of its rights to audit, examine, or re-examine Accredo's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph, and to disagree with any calculations submitted by Accredo or any of its agencies or departments concerning any Unallowable Costs included in payments previously sought by Accredo, or the effect of any such Unallowable Costs on the amount of such payments.

17. Except as expressly provided to the contrary in this Stipulation, this Stipulation is intended to be for the benefit of the Settling Parties only. The Settling Parties do not release any claims against any other person or entity.

18. Accredo agrees that it waives and shall not seek payment of any of the health care billings covered by this Stipulation from any health care beneficiaries or their parents, sponsors,

legally responsible individuals, or third-party payors based upon the claims submitted in connection with the Covered Conduct.

19. This Stipulation is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Stipulation is the United States District Court for the Southern District of New York. For purposes of construing this Stipulation, it shall be deemed to have been drafted by the Settling Parties, and shall not, therefore, be construed against any Settling Party for that reason in any subsequent dispute.

20. Each of the Settling Parties shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Stipulation; provided, however, that nothing in this Stipulation shall preclude Relator from seeking to recover his expenses or attorney's fees and costs from Accredo, pursuant to 31 U.S.C. § 3730(d), or Accredo from opposing such a request by the Relator.

21. The undersigned counsel and other signatories represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and entities indicated below.

22. This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation. Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

23. Any notice pursuant to this Stipulation shall be in writing and shall, unless expressly provided otherwise herein, be delivered by express courier and by e-mail transmission, followed by postage-prepaid mail, to the following representatives:

TO THE UNITED STATES:

Li Yu
Rebecca C. Martin
David J. Kennedy
Jeffrey Powell
Peter M. Aronoff
Assistant United States Attorneys

Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007
E-mail:  Li.Yu@usdoj.gov
　　　　Rebecca.Martin@usdoj.gov
　　　　Jeff.Powell@usdoj.gov
　　　　David.Kennedy@usdoj.gov
　　　　Peter.Aronoff@usdoj.gov


TO THE RELATOR:

Shelley Slade, Esq.
Vogel, Slade & Goldstein, LLP
1718 Connecticut Ave., N.W., 7th Floor
Washington, D.C. 20017
E-mail:  SSlade@vsg-law.com


Arun Subramanian, Esq.
Susman Godfrey LLC
560 Lexington Avenue
New York, NY 10022
E-mail:  asubramanian@SusmanGodfrey.com

TO ACCREDO:

Daniel Meron, Esq.
Allen Gardner, Esq.
Latham & Watkins LLP
555 Eleventh Street, NW
Washington, D.C. 20004
Email:  Daniel.Meron@lw.com
　　　　Allen.Gardner@lw.com


24. The effective date of this Stipulation is the date upon which this Stipulation is entered by the Court (the "Effective Date).

25. This Stipulation constitutes the complete agreement between the Settling Parties. This Stipulation may not be amended except by written consent of the Settling Parties.

*For the United States*:

Dated: April 27, 2015

    PREET BHARARA
    United States Attorney

By: _____
    LI YU
    REBECCA C. MARTIN
    DAVID J. KENNEDY
    JEFFREY POWELL
    PETER M. ARONOFF
    Assistant United States Attorneys
    86 Chambers Street, 3rd Floor
    New York, New York 10007

*For the Relator*:

Dated: April 27, 2015

    VOGEL, SLADE & GOLDSTEIN, LLP

By: _____
    SHELLEY R. SLADE, ESQ.


    SUSMAN GODFREY LLP

By: _____
    ARUN SUBRAMANIAN, ESQ.


_____
DAVID KESTER

*For Accredo and CuraScript*:

Dated: April 27, 2015

    LATHAM & WATKINS LLP

By: _____
    DANIEL MERON, ESQ.
    ALLEN GARDNER, ESQ.
    555 Eleventh Street, NW
    Washington, D.C. 20004


    ACCREDO HEALTH GROUP, INC.

By: _____
    KEITH J. EBLING
    Executive Vice President
    and General Counsel
    Express Scripts Holding Company


SO ORDERED:

_____
HON. COLLEEN MCMAHON
UNITED STATES DISTRICT JUDGE

25. This Stipulation constitutes the complete agreement between the Settling Parties. This Stipulation may not be amended except by written consent of the Settling Parties.

*For the United States*:

Dated: April 27, 2015

    PREET BHARARA
    United States Attorney

By: _____
    LI YU
    REBECCA C. MARTIN
    DAVID J. KENNEDY
    JEFFREY POWELL
    PETER M. ARONOFF
    Assistant United States Attorneys
    86 Chambers Street, 3rd Floor
    New York, New York 10007

*For the Relator*:

Dated: April 27, 2015

    VOGEL, SLADE & GOLDSTEIN, LLP

By: _____
    SHELLEY R. SLADE, ESQ.


    SUSMAN GODFREY LLP

By: _____
    ARUN SUBRAMANIAN, ESQ.

    _____
    DAVID KESTER

*For Accredo and CuraScript*:

Dated: April 27, 2015

    LATHAM & WATKINS LLP

By: _____
    DANIEL MERON, ESQ.
    ALLEN GARDNER, ESQ.
    555 Eleventh Street, NW
    Washington, D.C. 20004


    ACCREDO HEALTH GROUP, INC.

By: _____
    KEITH J. EBLING
    Executive Vice President
    and General Counsel
    Express Scripts Holding Company


SO ORDERED: _____
HON. COLLEEN MCMAHON
UNITED STATES DISTRICT JUDGE

4/29/2015

25. This Stipulation constitutes the complete agreement between the Settling Parties. This Stipulation may not be amended except by written consent of the Settling Parties.

*For the United States*:

Dated: April 27, 2015

    PREET BHARARA
    United States Attorney

By: _____
    LI YU
    REBECCA C. MARTIN
    DAVID J. KENNEDY
    JEFFREY POWELL
    PETER M. ARONOFF
    Assistant United States Attorneys
    86 Chambers Street, 3rd Floor
    New York, New York 10007

*For the Relator*:

Dated: April 27, 2015

    VOGEL, SLADE & GOLDSTEIN, LLP

By: _____
    SHELLEY R. SLADE, ESQ.

    SUSMAN GODFREY LLP

By: _____
    ARUN SUBRAMANIAN, ESQ.

_____
DAVID KESTER

*For Accredo and CuraScript*:

Dated: April 27, 2015

    LATHAM & WATKINS LLP

By: _____
    DANIEL MERON, ESQ.
    ALLEN GARDNER, ESQ.
    555 Eleventh Street, NW
    Washington, D.C. 20004

    ACCREDO HEALTH GROUP, INC.

By: _____
    KEITH J. EBLING
    Executive Vice President
    and General Counsel
    Express Scripts Holding Company

SO ORDERED: _____
HON. COLLEEN MCMAHON
UNITED STATES DISTRICT JUDGE

4/29/2015