# Exhibit A

## **SETTLEMENT AGREEMENT**

This Settlement Agreement ("**Agreement**") is entered into between the *qui tam* relator David M. Kester ("**Relator**") and CVS Health Corporation ("**CVS**"), through their authorized representatives. Each of Relator and CVS are sometimes referred to herein individually as a "**Party**" and, collectively, as the "**Parties**."

## RECITALS

A. On November 14, 2011, Relator filed a sealed *qui tam* action in the United States District Court for the Southern District of New York (the "**Court**") captioned *United States ex rel. Kester v. Novartis Pharmaceuticals Corporation et al.*, No. 11-8196 (S.D.N.Y.) (the "**Action**"), pursuant to the *qui tam* provisions of the False Claims Act (FCA), 31 U.S.C. § 3730(b). Relator's complaint made allegations against a number of defendants (including CVS and Novartis Pharmaceuticals Corporation ("**Novartis**")) relating to the Novartis drugs Myfortic, Exjade, Gleevec, Tasigna, and TOBI.

B. On October 30, 2013, the United States filed a notice with the Court intervening against Novartis with respect to Exjade, but declining to intervene as to Relator's allegations relating to Gleevec, Tasigna and TOBI. A number of states have also intervened against Novartis with respect to BioScrip, Inc. and Accredo Health Group, Inc. and the drug Exjade. Earlier, the United States had intervened with regard to Myfortic. On January 6, 2014, the United States filed a notice with the Court intervening against BioScrip, Inc. with respect to Exjade, but declining to intervene against all other defendants named by the Relator, including CVS (Dkt. No. 44). On May 1, 2015, the United States intervened against Accredo with regard to Exjade.

C. On behalf of himself, the United States and the states of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Louisiana, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Virginia and Wisconsin, and the District of Columbia, Relator alleges that beginning on April 1, 2010, CVS submitted or caused to be submitted false claims for payment to federal and state health care programs, made or caused to be made false statements to get false claims paid, and avoided the repaying of identified overpayments.

D. This Agreement is not an admission of liability by CVS. CVS expressly denies Relator's allegations as set forth herein and in Relator's Third Amended Complaint, filed September 15, 2014 (Dkt. No. 253), and denies that it engaged in any misconduct.

E. To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1.     Notices and Withdrawals.  On June 16, 2015, Relator filed a Notice of Settlement (Dkt. No. 462). Immediately thereafter, CVS filed a joint motion to stay briefing and resolution on CVS's Rule 72 Motion (Dkt. No. 463) pending execution of a settlement agreement and the Court's granting of a motion to dismiss CVS from the Action and withdrew the Notice of Deposition of David M. Kester it served on Relator for June 29, 2015.  The Parties are working in good faith to obtain the necessary consents from government plaintiffs to facilitate CVS's dismissal from the case pursuant to 31 U.S.C. 3730(b)(1) and applicable state law.  Within two (2) business days after all such government plaintiffs have consented to CVS's dismissal, Relator will move the Court for dismissal with prejudice of all of his claims against CVS as set forth in the Third Amended Complaint and dismissal without prejudice of the claims of the government plaintiffs, with the exception of any claims brought on behalf of the State of Indiana, which can only be dismissed pursuant to a motion filed by the State of Indiana.

2.     Relator's Release; Covenant Not to Sue and Indemnification.

        a.     The Relator, on behalf of (1) himself and his heirs, successors and assigns, (2) the executors, administrators and representatives of each Person identified in clause (1), (3) the attorneys, agents, insurers and reinsurers of each Person identified in clauses (1) and (2), and (4) any other Person that claims or might claim by, through, under, on behalf of or for the benefit of any of the foregoing (collectively, the "**Releasors**") hereby releases CVS as well as (x) each and any of its current and former parents, subsidiaries and affiliates; (y) the respective current and former partners, shareholders, members, directors, officers, associates, employees, managers, agents, attorneys, representatives, insurers and reinsurers of each Person identified in clause (x); and (z) the heirs, executors, administrators, trustees, beneficiaries, predecessors, successors and assigns of any of the foregoing (collectively, the "**CVS Releasees**") from any and all complaints, claims/counterclaims, demands, liabilities, obligations, promises, agreements, controversies, actions, causes of action, suits, rights, damages, costs, losses, debts, charges, and expenses (including attorneys' fees and disbursements of counsel and other professionals) of any and every nature whatsoever, whether in law or in equity, whether currently known or unknown, suspected or unsuspected, whether arising under the law of contract, tort, malpractice, statutory breach or any other legal right or duty and whether they be directly, indirectly, nominally or beneficially, possessed or claimed by the Relator that such Relator has had, now has, or hereafter can, shall, or may have against any of the foregoing CVS Releasees from the beginning of the world through the date hereof arising out of or relating in any way to the matters alleged in the Action (each a "**Claim**" and, together, the "**Claims**").

        b.     Relator agrees not to seek any personal recovery (of money damages, injunctive relief or otherwise) for the Claims he is releasing in this Agreement, either through any complaint to any governmental agency or otherwise.  In the event any governmental agency seeks any recovery from CVS as a result of Relator's conduct or actions as a relator under the False Claims Act, Relator will have dismissed all of his Claims under the False Claims Act in this Agreement and will, if inquiry is made, inform the Attorney General that he has no right or claim to a relator's share of any action or recovery of funds from CVS by the government or to any attorneys' fees and, should the government award him any money from CVS as a relator,

Relator will promptly return such sums, less any taxes owed by Relator as a result of such an award, to the Attorney General.  Relator agrees never to start or participate as a party, or encourage or assist, in any lawsuit, complaint, charge, administrative proceeding or arbitration against CVS asserting or relating to any of the Claims he is releasing in this Agreement (except to the extent provided for in this Agreement), and provided, however, that nothing in this Agreement is intended to prohibit Relator from cooperating in any government investigation, testifying as required by law, responding to a subpoena, or obeying a court order.

       c.     Each CVS Releasee may plead this Agreement as a complete defense and bar to any claim brought in contravention hereof (each a "**Released Claim**").  In the event that Relator brings a Released Claim against a CVS Releasee, Relator shall indemnify, defend and hold harmless any CVS Releasee against which or whom such Released Claim is brought from and against any and all costs, fees, liabilities, expenses, damages, judgments, interest, debts, or losses incurred or suffered in connection therewith, including the reasonable fees and disbursements of counsel and other professionals and court costs incurred in connection with enforcing the terms of this Section 2(c).

       3.     <u>CVS's Release; Covenant Not to Sue and Indemnification</u>.

       a.     CVS hereby releases Relator, as well as (a) his heirs, successors and assigns, (b) the executors, administrators and representatives of each person identified in clause (a), and (c) the attorneys, agents, insurers and reinsurers of the Relator and each person identified in clauses (a) and (b) (collectively, the "**Relator's Releasees**"), from any and all complaints, claims/counterclaims, demands, liabilities, obligations, promises, agreements, controversies, actions, causes of action, suits, rights, damages, costs, losses, debts, charges, and expenses (including attorneys' fees and disbursements of counsel and other professionals) of any and every nature whatsoever, whether in law or in equity, whether currently known or unknown, suspected or unsuspected, whether arising under the law of contract, tort, malpractice, statutory breach or any other legal right or duty and whether they be directly, indirectly, nominally or beneficially, possessed or claimed by CVS that CVS has had, now has, or hereafter can, shall, or may have against any of the foregoing Relator's Releasees from the beginning of the world through the date hereof, including any CVS Claims arising out of or relating in any way to the matters alleged in the Action (each a "**CVS Claim**" and, together, the "**CVS Claims**").

       b.     CVS agrees not to seek any personal recovery (of money damages, injunctive relief or otherwise) for the CVS Claims it is releasing in this Agreement, either through any complaint to any governmental agency or otherwise.  CVS agrees never to start or participate as a part, or encourage or assist, in any lawsuit, complaint, charge, administrative proceeding or arbitration against Relator asserting or relating to any of the CVS Claims it is releasing in this Agreement, provided, however, that nothing in this Agreement is intended to prohibit CVS from cooperating in any government investigation, testifying as required by law, responding to a subpoena, or obeying a court order.

       c.     Each Relator Releasee may plead this Agreement as a complete defense and bar to any claim brought in contravention hereof (each "**Released CVS Claim**").  In the event that CVS brings a Released CVS Claim against a Relator Releasee, CVS shall indemnify, defend and hold harmless any Relator's Releasee against which or whom such Released CVS

3

Claim is brought from and against any and all costs, fees, liabilities, expenses, damages, judgments, interest, debts, or losses incurred or suffered in connection therewith, including the reasonable fees and disbursements of counsel and other professionals and court costs incurred in connection with enforcing the terms of this Section 3(c).

4. <u>Continuing Discovery</u>. In consideration of the above-provided release and the undertakings by Relator herein, CVS agrees to the following continuing discovery:

a. On June 15, 2015, CVS substantially completed its production of all non-privileged documents responsive to (1) any outstanding document requests served on CVS by Relator prior to June 1, 2015, subject to CVS's objections and responses to those requests and any subsequent negotiations by the Parties, except as otherwise ordered by the Court, and (2) the Court's May 20, 2015 Order. Relator may serve additional reasonably tailored discovery requests as if CVS was still a party to this litigation subject to the limitations of the Federal Rules of Civil Procedure. Relator and CVS will confer in good faith regarding the reasonable scope and timing of any production(s) that Relator believes to be necessary subsequent to June 15, 2015. To the extent the Parties are unable to reach agreement concerning any such supplemental production(s), the Parties may seek relief from the Court in an action arising from this provision or any similar provision in the Settlement Agreement, over which provision the Court shall retain jurisdiction as long as CVS has obligations under any such provision.

b. CVS has furnished to the Relator complete and un-redacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the allegations in the Relator's Third Amended Complaint that CVS has undertaken, or that has been performed by another on its behalf.

c. CVS shall encourage and use its commercially reasonable efforts to make available, and not to impair, the cooperation of up to 10 potentially relevant witnesses who are current or former directors, officers, or employees of CVS, consistent with the rights and privileges of such individuals, for interviews with Relator's counsel regarding the matters alleged in the Third Amended Complaint. Relator shall retain the right to take a deposition of any such witness following such an interview, consistent with the rights and privileges of such individuals.

d. CVS's counsel, Williams & Connolly LLP, will meet with Relator's counsel at the offices of Williams & Connolly on a date prior to August 31, 2015, unless otherwise agreed upon. At least one week before that meeting, Relator's counsel will provide CVS's counsel with a list of the questions that Relator intends to pose at the meeting. To the extent CVS is unable to answer any of the listed questions, because, for example, the questions call for privileged information or work product, or would require unreasonably burdensome investigation by CVS, CVS will so notify Relator in advance of the meeting. Relator and CVS will confer in good faith as necessary to narrow or rephrase any such questions so that they can reasonably be answered without waiver of privilege or undue burden to CVS. CVS will then work in good faith to reasonably investigate the listed questions. At the meeting, CVS's counsel will provide factual information responsive to the listed questions.

4

    e. On or before July 31, 2015, CVS shall produce a privilege log relating to any then outstanding document requests. Relator reserves his right to challenge CVS's contention of privilege as to the items listed on the privilege log, and to the extent the Parties are unable to resolve any dispute concerning the production of any document on CVS's privilege log, they can raise such issue(s) with the Court, consistent with the Parties' agreement as set forth in Section 4(a) above.

    f. The Parties agree that nothing herein shall be construed as a waiver by CVS of any legal privilege, including but not limited to the attorney-client privilege, the work product doctrine, and the common interest doctrine. Relator will not take the position that CVS is obligated to disclose privileged information or materials that reflect attorney work product or other legal advice.

    5. <u>Extension of the Discovery Deadlines and Withdrawal of Kester Deposition Notice</u>. In consideration for the above release, CVS further agrees not to oppose Relator's motion to extend the discovery deadlines in this case by 60 days.

    6. <u>Ownership; No Assignment</u>. Relator warrants and represents that such Party is the sole and lawful owner of all rights, title, and interest in and to the matters released and settled by such Party herein, or otherwise has, to the fullest extent permitted by applicable law, the requisite power and authority to release and settle such matters on behalf of himself and the other Releasors, and that neither Relator nor any of the other Releasors has assigned, transferred, pledged, hypothecated, or subrogated any Released Claim or any part or portion of any Released Claim.

    7. <u>Signatory Authority</u>. Each Party that is not a natural person warrants and represents that the individual who executed and delivered this Agreement on such Party's behalf has due authority to execute and deliver this Agreement on behalf of such Party and that this Agreement constitutes, or will constitute when executed and delivered, a valid and binding agreement of such Party, enforceable in accordance with its terms. By signing and delivering this Agreement, each signatory represents and warrants that he or she either is a Party or has actual and express authority to execute and deliver this Agreement on behalf of the Party for whom such natural person has signed and delivered this Agreement.

    8. <u>Fees and Costs</u>. Except as otherwise set forth in Sections 2(c) and 3(c), above, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

    9. <u>Recitals</u>. The recitals set forth above are incorporated by reference and are explicitly made a part of this Agreement. However, in no event will either party to this agreement use such recitals as evidence in any dispute in this litigation related to TOBI Podhaler.

    10. <u>Good Faith Negotiations</u>. The Parties recognize and acknowledge that each of the Parties hereto is represented by counsel and that such Party received independent legal advice with respect to the advisability of entering into this Agreement. Each of the Parties acknowledges that: the negotiations leading up to this Agreement were conducted regularly and at arm's length; this Agreement is made and executed voluntarily by and of each Party's own

free will without any degree of duress or compulsion; each Party knows all of the relevant facts and its rights in connection therewith; and such Party has not been improperly influenced or induced to make this settlement as a result of any act or action on the part of any other Party or employee, agent, attorney or representative of such other Party. The Parties further acknowledge that they entered into this Agreement because of their desire to avoid the further expense and inconvenience of litigation and other disputes as to the Released Claims and to compromise permanently and settle the Released Claims by the execution and delivery of this Agreement. No Party hereto, nor any agent or representative thereof, has made any statement or representation to any other Party regarding any fact relied upon by such other Party in entering into this Agreement other than as expressly set forth herein.

11. <u>Governing Law; Exclusive Venue; Service of Process</u>. The validity, interpretation, and performance of this agreement shall be controlled by and construed under the laws of the State of New York (or United States federal law, to the extent applicable), including any applicable statutes of limitation, without regard to any otherwise applicable principles of conflicts of law or choice of law rules (whether of the State of New York or any other jurisdiction) that would result in the application of the substantive or procedural rules or law of any other jurisdiction. To the extent that any actions or proceedings related to any controversies or claims among the Parties arising out of or concerning this Agreement, or any alleged breach of this Agreement by any party, may be brought in any court, such action or proceeding, and any appeals thereof, shall be brought exclusively a federal court located in the Southern District of New York. No Party may object to the venue of such court as inconvenient, and each Party hereby consents to the jurisdiction of such court with respect to any such action and such Party. Process may be served in accordance either with the notice provisions set forth in this Agreement or any lawful form of service of process under applicable law.

12. <u>Remedies; Specific Performance</u>. The Parties acknowledge and agree that their respective rights and remedies under this Agreement shall be cumulative, and that no particular right or remedy shall function to waive or limit any other rights or remedies otherwise available to any Party, including the right to seek monetary damages, equitable relief or any other remedy, in law or in equity, against any other Party. Without limiting the foregoing, it is understood and agreed by the Parties that money damages would not be a sufficient remedy for any breach of this Agreement, by any Party and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach.

13. <u>Notices</u>. All demands, notices, requests, consents, and other communications hereunder shall be in writing and shall be deemed to have been duly given (i) when personally delivered by courier service or messenger, (ii) upon actual receipt (as established by confirmation of receipt or otherwise) during normal business hours, otherwise on the first business day thereafter if transmitted by facsimile or telecopier with confirmation of receipt, (iii) three (3) days after being duly deposited in the mail, by certified or registered mail, postage prepaid-return receipt requested, to the following addresses, or such other addresses as may be furnished hereafter by notice in writing, to the following parties:

    If to CVS, to:

    CVS Health Corp.

1 CVS Drive
Woonsocket, Rhode Island 02895
Attn: General Counsel

with a copy (not constituting notice) to:

Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Attn: Enu Mainigi, Esq.

If to Relator, to:

Mr. David M. Kester
~~1664 Brook Run Drive~~ 8947 Laws Road
~~Raleigh, NC 27614~~ Clermont, FL 34714

with a copy (not constituting notice) to:

Susman Godfrey LLP
560 Lexington Avenue, 15th Floor
New York, New York 10022
Attn: Arun Subramanian, Esq.

and

Vogel, Slade & Goldstein, LLP
1718 Connecticut Ave., N.W., 7th Floor
Washington, DC 20009
Attn: Shelley R. Slade, Esq.

      14.    <u>Construction</u>. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute. The captions and headings of the Sections of this Agreement are for convenience of reference only and are not to be considered in construing this Agreement. Unless the context of this Agreement clearly requires otherwise: (a) references to the plural include the singular, the singular the plural, and the part the whole, (b) references to one gender include all genders, (c) "or" has the inclusive meaning frequently identified with the phrase "and/or," (d) "including" and "includes" have the inclusive meaning frequently identified with phrases such as "including but not limited to," "including without limitation" or "includes, but is not limited to" (e) references to "hereunder," "herein" or "hereof" relate to this Agreement as a whole, and (f) the terms "dollars" and "$" refer to United States dollars. Section, subsection, exhibit and schedule references are to this Agreement as originally executed unless otherwise specified. Any reference herein to any statute, rule, regulation or agreement, including this Agreement, shall be deemed to include such statute, rule, regulation or agreement as it may be modified, varied, amended or supplemented from time to

time. Any reference herein to any Person shall be deemed to include the heirs, personal representatives, successors and permitted assigns of such Person.

15. <u>Entire Agreement; Amendments</u>. This Agreement constitutes the complete agreement between the Parties with regard to the subject hereof and supersedes all prior negotiations, representations, agreements, promises or warranties (oral or otherwise) made by any party with respect to the subject matter hereof (including the Settlement Term Sheet dated June 16, 2015). No party has entered into this Agreement in reliance on any other party's prior representation, promise or warranty (oral or otherwise) except for those that may be expressly set forth in this Agreement. This Agreement may not be modified, amended or supplemented except by a written agreement executed by each of the Parties.

16. <u>No Admission of Liability; Use</u>. The execution of this Agreement is not intended to be, nor shall it be construed as, an admission or evidence in any pending or subsequent suit, action, proceeding or dispute (including the Action) of any liability, wrongdoing, or obligation whatsoever (including as to the merits of any claim or defense) by any Party to any other Party or to any other Person with respect to any of the matters addressed in this Agreement. None of this Agreement, the payment of any amounts due hereunder or any act performed by or document executed pursuant to or in furtherance of this Agreement shall be admissible in any proceeding for any purposes, except to enforce the terms of the Agreement.

17. <u>Challenges</u>. Should this Agreement be challenged by any person as not fair, adequate or reasonable pursuant to 31 U.S.C. § 3730(c)(2)(B), the Parties agree that they will take all reasonable and necessary steps to defend this Agreement.

18. <u>Binding Agreement on Successors and Assigns</u>. This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors, assigns, administrators, constituents and representatives. No Party may assign, pledge, delegate or otherwise transfer any of their respective rights, obligations, or duties under this Agreement absent the express written consent of each other Party. Any attempted assignment in violation of the foregoing shall be null and void and of no force or effect.

19. <u>Severability</u>. Each term and provision of this Agreement shall be considered severable, and if for any reason any term or provision of this Agreement, or the application of such term or provision to any Person or circumstance, shall be finally declared, held, or found to be invalid, illegal, or unenforceable in whole or in part by any arbiter or court of competent jurisdiction and cannot be modified by such arbiter or court to be enforceable, then: (i) such term or provision, or part thereof, shall be ineffective solely in such jurisdiction to the extent of such invalidity, illegality, or unenforceability without invalidating the application of the affected provision to Persons or circumstances in such jurisdiction other than those to which it was held invalid or unenforceable, and without invalidating the remaining terms or provisions hereof in any jurisdiction, (ii) if capable of performance in such jurisdiction, the remainder of this Agreement shall remain in full force and effect, and (iii) solely as to such jurisdiction, the Parties hereto shall negotiate in good faith to modify or replace the invalid, illegal or unenforceable term or provision with a valid, legal and enforceable term or provision which most accurately represents the Parties' intention with respect to the invalid, illegal or unenforceable term or

provision. Any modification of a term or provision of this Agreement by an arbiter or court of competent jurisdiction in accordance with the terms of this Section 19 shall apply only within said jurisdiction.

20. <u>Third Party Beneficiaries</u>. Nothing in this Agreement, express or implied, is intended or shall be construed to confer upon, or to give to, any Person other than the Parties hereto, the CVS Releasees, the Relator's Releasees, and their respective successors and assigns, any right, remedy or claim under or by reason of this Agreement or any covenant, condition or stipulation thereof; and the covenants, stipulations and agreements contained in this Agreement are and shall be for the sole and exclusive benefit of the Parties hereto, the CVS Releasees, the Relator's Releasees and their respective successors and assigns.

21. <u>Reserved Claims</u>. The Parties understand and agree that any and all claims the United States and/or other government plaintiffs, including any state governments, have or may have with respect to any matter alleged in this Action, including but not limited to any claims against CVS regarding TOBI, Gleevec and/or Tasigna, are specifically reserved and will not be released, dismissed or in any manner affected or impaired by this settlement.

22. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement. Execution and delivery of this Agreement by facsimile or other electronic means (including by email or .pdf) shall be sufficient for all purposes and shall be binding on any person or party who so executes.

**[Remainder of Page Intentionally Blank]**

Dated: July 17, 2015

*For the Relator*:

By: _____
ARUN SUBRAMANIAN, ESQ.
SUSMAN GODFREY LLP
560 Lexington Avenue, 15th Floor
New York, NY 10022

By: *Shelley R. Slade*
SHELLEY R. SLADE, ESQ.
VOGEL, SLADE & GOLDSTEIN, LLP
1718 Connecticut Ave., N.W., 7th Floor
Washington, DC 20009

By: _____
DAVID M. KESTER
~~1664 Brook Run Drive~~
~~Raleigh, NC 27614~~
8947 Laws Road
Clermont, FL 34714

Dated: July 14, 2015

*For CVS*:

By: _____
ENU MAINIGI, ESQ.
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20015

By: _____
ELIZABETH FERGUSON, ESQ.
SENIOR VICE PRESIDENT AND ASSISTANT GENERAL COUNSEL
CVS HEALTH CORPORATION
One CVS Drive
Woonsocket, RI 02895

Dated: July 14, 2015

*For CVS*:

By: _____
ENU MAINIGI, ESQ.
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20015

By: _____
ELIZABETH FERGUSON, ESQ.
SENIOR VICE PRESIDENT AND ASSISTANT GENERAL COUNSEL
CVS HEALTH CORPORATION
One CVS Drive
Woonsocket, RI 02895